NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 21, 2022
Decided March 28, 2022

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 21-2270

| | |
|---|---|
| IDALA STROUSE GASSER and JOHN GASSER, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *Plaintiffs-Appellants*, | |
| *v.* | No. 20-cv-595 |
| VILLAGE OF PLEASANT PRAIRIE, *et al.*, | Brett H. Ludwig, *Judge*. |
| *Defendants-Appellees*. | |

## O R D E R

In 2018, Idala Strouse Gasser was involved in a two-car traffic accident in Pleasant Prairie, Wisconsin. Officers Patrick Gainer, Nicholas Brickert, and Andrea Brey responded to the accident. After interviewing those involved in the accident, reviewing surveillance video from a nearby traffic camera, and consulting other officers, Officer Brickert arrested Gasser. Officers Gainer and Brickert transported Gasser to the Pleasant Prairie Police Department. There, Gasser underwent standardized field sobriety tests, which led the officers to believe she was impaired.

Officers Gainer and Brickert then transported Gasser to St. Catherine's Hospital, where a medical technician drew her blood for testing. Afterwards, Gasser was given the opportunity to call someone to pick her up. But she was unable to obtain a ride within forty-five minutes, so the officers transported Gasser to the Kenosha County Jail. At the jail, both officers secured their weapons and escorted Gasser inside. Once inside the facility, the officers waited in a small holding room for correctional officers to arrive. Gasser was handcuffed behind her back. Gasser's wait inside the holding room was recorded by a camera located inside the room. The clarity of the video is excellent.

The incident that occurred next was captured by the video recording and led to this suit. Around eleven minutes into the video, Gasser and the two officers start conversing. We do not know exactly what they are saying because the video does not contain sound. Seconds later, Officers Gainer and Brickert approach Gasser as she is standing in front of a bench. Officer Gainer motions Gasser to sit down on the bench behind her by twice pointing to the bench. Gasser admits that even though Officer Gainer told her to sit down, she did not do so immediately because she "did not want to" and was "anxious and afraid." Officer Gainer then places his open hand on her left shoulder and, applying some force, guides her to a seated position on the bench. At that point, Gasser was still handcuffed behind her back.

Remaining quite still, Gasser then stays seated for over seven minutes, only getting up twice to quickly adjust herself before sitting back down. Eventually, once Officer Brickert opens the door, Gasser gets up on her own accord and walks out of the holding room. Neither officer had any other physical contact with Gasser, and the above-mentioned incident was the only instance in which she alleges Officer Gainer used excessive force against her.

Seeking relief under 42 U.S.C. § 1983, Gasser and her husband, John Gasser, sued the Village of Pleasant Prairie, Police Officers Gainer and Brickert, and two unnamed John Doe officers. They alleged that the officers used excessive force against Gasser in violation of the Fourth Amendment. The Gassers also alleged a substantive due process claim under the Fourteenth Amendment and a state-law claim. All defendants moved for summary judgment, arguing that only Officer Gainer had any physical contact with Gasser and that Officer Gainer's actions were objectively reasonable and did not constitute excessive force as a matter of law.

The district court granted the defendants' motion for summary judgment on all counts. Relevant to this appeal, the district court held that the video evidence shows that Officer Gainer's physical contact with Gasser was neither excessive nor

unreasonable and that summary judgment was warranted because the objective video evidence defeated Gasser's factual and legal assertions. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). The district court also dismissed John Gasser's claims because it found that there was no evidence that any defendant applied force, excessive or otherwise, against him. *See Rizzo v. Goode*, 423 U.S. 362, 370–71 (1976). Only Gasser appeals, limiting the appeal to her federal claims against Officer Gainer.

We review the district court's order granting summary judgment *de novo*. *Flexible Steel Lacing Co. v. Conveyor Accessories, Inc.*, 955 F.3d 632, 643 (7th Cir. 2020). "Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). In cases where video evidence is available, as here, there are additional contours to the summary judgment methodology. "[T]o the extent [plaintiff's] story is 'blatantly contradicted' by the video such that no reasonable jury could believe it, we do not credit h[er] version of events." *Dockery v. Blackburn*, 911 F.3d 458, 461 (7th Cir. 2018) (quoting *Scott*, 550 U.S. at 380).

As a preliminary matter, the district court found that Gasser failed to develop her Fourteenth Amendment claim, and it deemed the claim abandoned. Gasser now presses the claim on appeal even though she did not address the claim in her briefing before the district court. An argument that is not developed before a district court may not be raised for the first time on appeal. *See Markel Ins. Co. v. Rau*, 954 F.3d 1012, 1018 (7th Cir. 2020). We therefore find that her Fourteenth Amendment claim is waived. Even so, it is unclear how Officer Gainer's actions violated the Fourteenth Amendment, because Gasser alleges Officer Gainer used excessive force—a claim "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989).

A claim that a police officer used excessive force is evaluated under the Fourth Amendment's objective reasonableness standard. *Graham*, 490 U.S. at 388. "Determining whether the force was reasonable … requires 'a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Horton v. Pobjecky*, 883 F.3d 941, 949 (7th Cir. 2018) (quoting *Graham*, 490 U.S. at 396). "A plaintiff must show the officer's use of force was objectively excessive from the perspective of a reasonable officer on the scene under the totality of the circumstances." *Id.* at 949 (citing *Graham*, 490 U.S. at 396–97). "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an

objectively unreasonable use of force constitutional." *Id.* at 950 (quoting *Graham*, 490 U.S. at 397).

Relying on *Scott*, the district court found that the objective video evidence contradicted Gasser's recounting of the events. In *Scott*, the plaintiff and defendant presented differing accounts of a high-speed vehicle chase that ended in a police officer conducting a precision intervention technique maneuver to end the chase. 550 U.S. at 375. Because of the maneuver, the plaintiff's vehicle crashed, and he was severely injured. *Id.* The record contained video evidence of the chase that "t[old] quite a different story" than the plaintiff's account. *Id.* at 379. Indeed, after reviewing the video evidence, the Court found that "[r]espondent's version of events [was] so utterly discredited by the record that no reasonable jury could have believed him." *Id.* at 380.

Like the plaintiff in *Scott*, Gasser describes a very different scene than what the video evidence shows. She claims that Officer Gainer "shoved her down onto the concrete bench" with enough force to cause her to "bounce[] up and then down and then lean[] forward to try and stretch out the pain." (Appellant's Br. at 18.) But that is not what the video evidence shows. Instead, the video shows Officer Gainer putting his hand on Gasser's shoulder and applying force to get her to sit down. Gasser then sits on the bench for over seven minutes, remaining relatively still the entire time. The video also shows Gasser standing up, unassisted, to walk out of the room once Officer Brickert opens the holding room door.

Based on the video evidence, no reasonable jury could believe Gasser's versions of the events. *Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Therefore, we are left with the video recording's version of the incident and Gasser's admission that she did not comply when Officer Gainer told her to sit down.

Accordingly, we simply cannot hold that Officer Gainer's "use of force was objectively excessive from the perspective of a reasonable officer on the scene under the totality of the circumstances." *Horton*, 883 F.3d at 949 (citing *Graham*, 490 U.S. at 396–97); *cf. Cibulka v. City of Madison*, 992 F.3d 633, 640 (7th Cir. 2021) ("[W]e fail to see how this routine police activity is an obvious constitutional violation."). We AFFIRM.